Good morning. I'm Harriet Levitt on behalf of the appellant. I would like to save a couple of minutes for rebuttal. We are here today to talk about the use of material witness depositions in the state of Arizona at trials on charges of transporting or smuggling illegal aliens and the fact that in the District of Arizona, nobody seems to follow the rules regarding the use of material witness depositions. Does this happen fairly frequently? This is the way it's done, Your Honor, and this is why we're here today. Nobody, I think, even knows about the general order that the Court issued. Nobody follows the general order. Nobody follows Rule 15. And I submit that this is a violation of the constitutional rights of this defendant and all other defendants similarly situated. If the Court has any specific questions, I'll be happy to answer. Otherwise, I'll go into the room. Well, as I understand the thrust of your challenge, the challenge is really to the manner in which the testimony was used at trial. The government never laid the predicate for the admissibility. But it seems to me that the manner in which the depositions were conducted did follow the rule, did it not? No, that's only part of it. As far as the part about the use at trial, the Court is absolutely correct. However, how the initial depositions are taken is also an issue, because according to the rules, the attorney for the material witnesses is the one who's supposed to request the deposition as a means of getting his clients out of custody. Well, but can't any party request it as well? There are two options. Either the attorney for the witness may request it, or any party may. So the government was a party. And why was it inappropriate for the government as a party to request the deposition? Well, let me back up, Judge Rawlinson, because your question is very important. The attorney for the material witnesses is supposed to make these people available for an interview in advance of the deposition. That isn't happening. The government holds an initial appearance or a detention hearing and announces to the Court that the depositions for the material witnesses have been set for such and such date. And that's your date. Was there a request for an interview prior to the deposition made here? I don't believe so. It's not in the record. And so I wouldn't say that the request was made or not made. I don't think it was. The general order says that the onus is on the defendant to make the request. Yes, it does. And the general order isn't published anywhere. It isn't distributed. So it's not on the Court's website? I don't think anybody knows about it. It may be on the Court's website, but I don't think anybody knows about it. Well, if nobody knew about it, why is there an argument that it was violated at that time if nobody knew about it? I think if the Court promulgates an order, it's required to distribute that order. People are required to know about it and they're required to follow it. And the attorney, getting back to your question, the attorney for the material witnesses – Before we leave that, the general order also says that it's to be consistent with Rule 15. Yes. And the statute. Yes. So if the statute and the rule are complied with, then the general order probably is complied with. Probably. But when you don't have an interview of these people in advance, you don't know exactly what to expect them to say at this deposition. The deposition is taken very early on in the case when there's no opportunity to investigate the veracity of the claims that the material witnesses are making. And as happened in this case, the defense attorney attempted to get the depositions continued more than once, and after the second request was told, you just get somebody else to cover for you. So you had an attorney who had not represented Mr. Matuselis before asking certain questions which really helped the prosecution case, questions about things they had told the Border Patrol agents in their interviews that the prosecutor hadn't brought out. And statements were brought out from these material witnesses on cross-examination which were total hearsay. So what remedy are you seeking? I'm seeking for this Court, as to Mr. Matuselis, to reverse his conviction. And as to cases like this in general, I'm asking this Court to tell the District of Arizona, you read these rules, you follow these rules, and you make sure that if material witnesses are released, that the government be held to the standard of making diligent, good-faith efforts to bring them back into the country if they're going to try them. Now, what's our standard for determining whether or not any deficiencies in the process merit reversal of the conviction? What's our standard of review? Well, the government is suggesting it's plain error. I think that standard is met here. I think that a standard less than that is warranted because the defendant actually objected in this case and objected early on and was shot down. Objected to what? To the conduct of these depositions and to the release of the material witnesses prior to trial. That objection was made right at the beginning. Yeah, but objecting to the deposition isn't enough to get you plain error, to get you satisfaction of the plain error standard, is it? I don't think it is either, but I think that the objection was couched in specific enough terms that we get to that standard because the objection also said I don't want these people released pending trial. I want these people presenting pending trial. But if these people are truly witnesses and not defendants themselves, don't we have to balance the imposition on their liberty interests in having them? I mean, you could move for multiple continuances of the alien smuggling case and have these people sitting in jail for months and months waiting for the trial to occur. Isn't that what the rule was promulgated to address, the tension? Yes, but why don't we have some kind of safeguards on that? If that – if the concern is balancing their interests, and I recognize that may be a legitimate concern, why aren't we saying to the courts, to the prosecutors, to the defendants, we're going to fast-track these so that we don't keep them in that long? Why aren't we – or alternatively, why aren't we making the attorney for the material witness do his job and present some articulable reasons why this client is a safe risk to be released because this is how we're going to get in touch with him to make sure that they come back? I'm assuming, counsel, that virtually all of these witnesses, if they're involved in an alien smuggling case, are not going to be permitted to stay here because they're not here legally to begin with. That's right. We have to assume that they're going to be immediately deported as soon as they're released from custody, right? I believe that the deal that they make with the government is that they won't be deported, but they'll have a voluntary return to their country. Okay. But the bottom line is that they don't have any right to stay here. And short of jailing them, I mean, we don't – we can't put them in a halfway house or a hotel while we await the trial. The government has been known to parole people into the country when they wish to. That's the question. That's getting them back. Yeah. Well, they've been – they've been known to parole them into the country pending another hearing. And that's entirely within the control of the government. That's not within the control of the defendant. I would like to reserve a few – a little bit of time for rebuttal if I may. Sure.  Well, let's hear from the government. May it please the Court. Good afternoon. I'm Bob Miskell from the U.S. Attorney's Office in Tucson, Arizona, on behalf of the government in this case. Were you the trial attorney for this case? No, I was not, although I am familiar with the procedures used in the District of Arizona for material witnesses. I'll lift the mic up a little bit. Thank you. Or not used, as the case may be. Actually, the statutes and the rules were complied with in this case and in fact in all the cases in the District of Arizona. 18 U.S.C. 3144 requires the government to make a threshold showing before a material witness can be detained. That's kind of the first part of the statute. And the government did that in this case by filing an affidavit from a Border Patrol agent stating that the witness has information regarding the case. The witness was a citizen of Mexico who did not have status to stay in the United States. Then 3144 says no material witness may be detained because of the inability to comply with any conditions of release if the testimony of such witness can be adequately secured by deposition and if further detention is not necessary to prevent a failure of justice. That's what the statute says and that's what happened in this case. The government arranged for videotaped depositions to be conducted. In the typical case, they conducted within 20 business days. In this case, it actually went out for about a month and a half, which left a month and a half for the defense attorney to attempt to interview the material witnesses, which is allowed by the general order. And again, there's no evidence. Did you know, did your office know about the general order? Yeah. The general order is on the Court's website, actually. The witness interviews that the general order provides for, though, doesn't preclude the witnesses have a right not to be interviewed, too, under Ninth Circuit law. They have so it's just an opportunity to have an interview that is given by the general order. Well, given the fact that there wasn't a request for an interview, I'm not even sure that's an issue. I'm not even sure that's an issue before us. Okay. And then as far as Rule 15, the two complaints about the compliance with Rule 15 is that the government was the party that initiated the deposition procedure. And as Judge Rollins pointed out, the rule specifically provides a party can initiate the deposition proceeding. And then the other complaint about the Rule 15 was with the fact that the defendant didn't sign the, excuse me, the witness didn't sign the transcript. In this case, what was played for the jury was a videotape. Even if you can assume there's some way to sign a videotape, clearly there was no prejudice shown by having a videotape played to the jury. There's no question on what the witness said when you have a videotape. The thing that concerns me the most is the lack of a showing of unavailability before the depositions were used at the trial. Okay. In this case, there was not an objection that preserved that issue for review. Such an objection would have had to have been made at the time the government moved to admission. What case says that? What case says that there has to be an objection to trigger the government's obligation to make a showing of unavailability? Well, I'm not, no, excuse me. I'm not, I don't mean to say that, Your Honor. What I'm saying is because there was no objection, any review was for plain error. Okay. That's what I meant to say. I'm sorry if I confused things. Okay. So under the plain error standard, there is no plain error because the defendant can't. There's error, right? The government under Rule 804, one of the foundational requisites for introducing testimony in a deposition is to show unavailability. So there was error in not showing unavailability, right? Yes. And it's plain because you plainly have the obligation to show unavailability before you can put in deposition testimony. It is not. Even without objection. It is not plain error because the defendant cannot establish prejudice. Okay. That's the government's position. Okay. So why not? Because, again, the videotape, the witness was subject to cross-examination. There is no suggestion that these witnesses were available. Actually, it's pretty, if you're ---- Well, that's a negative. I mean, it's your burden to prove they're unavailable. So you can't say because they didn't show they were available, we've met our burden of showing they're unavailable. Under the plain error standard, the defendant has the burden of showing prejudice. And, again, the videotape was subject to cross-examination. The witness cannot, excuse me, the defendant cannot show the government did not make reasonable efforts. There is no showing that the witnesses were available. Everything in the record indicates that the witnesses, in the normal course of things, were returned to Mexico, where they are beyond the subpoena power of the United States government. So, and ---- Well, there's a ---- Let me ask you. Let me stop and ask you, counsel. There was a suggestion, I think it was in the defense brief, that the government could have served a trial subpoena on the witness before they were allowed to voluntarily depart. And, presumably, the witness could have been told, we'll pay your expenses back and we will parole you back into the United States for purposes of testifying at the trial. But we don't know whether that kind of an offer was made at the time that these witnesses were released, do we? Because there was no objection in the trial court, the government did not present what evidence it had about the steps that it had taken. So should we remand for an evidentiary hearing on that issue, whether or not the witnesses were unavailable? And if the trial court concludes that they were not available, would that cure the error here, so that we wouldn't have to vacate the conviction and remand for a new trial? Yes. That would, if the court found that there was plain error, that would cure the error by remanding. And if the government were not able to make a showing that they were unavailable, would that then result in the convictions being overturned, in your view? I would think so, because that means the deposition testimony would not have been properly admitted. And I'm having a hard time articulating how the government could claim admitting them was harmless, actually. Well, I mean, the whole case turned on the identification of this defendant as one of the smugglers. Right. That is correct. And that was established through the testimony of the material witness. Correct. But again, the government's position is, under the plain error standard, the defendant doesn't meet that burden. Unless the court has additional questions. Well, going forward, what exactly should the government do? The government should, at trial, make sure it puts on the record exactly what steps it took to procure the return of the witnesses from Mexico to make sure it meets the standard. And that's what the government should do. Well, maybe factually the government should make sure that it's made every effort to return these witnesses. Right. And that could be, and again, a lot, since the court actually appoints an attorney to represent these witnesses in connection with the case, the government actually has to work through the attorney for the witnesses. Because we can't contact a represented person directly. So we have to. But that raises, I mean, I think we're all, I think we understand the practical problem here, that once they go back to Mexico, we can't reach them. And even if they had a lawyer appointed to represent them at the material witness hearing, the chances that he's even still in contact with them are pretty slim. And we don't know whether he would be authorized by his client or her client to accept service of the trial subpoena for them. I mean, as a practical matter, what we typically do is we offer to pay any expenses of the witness to come back to the United States. We offer to arrange for them to be paroled into the country for the limited purpose of allowing their testimony. And beyond that, there's not actually a whole lot we can do in that scenario. But so you're really relying on their voluntary willingness to come back under those circumstances with the attendant risks to them and to their families if it becomes known that they're testifying against smugglers on the American side. That is correct. And that's because, for the simple fact, the government can't enforce a subpoena in the Republic of Mexico. Or protect them from retaliation. That is correct. Doesn't the government have the ability to ask the Mexican government for assistance? There is a mutual legal assistance treaty between the United States and Mexico. Although, and I'm going from memory on this, Judge. I believe the way it ends up is they help arrange for a deposition of the witness in the foreign country that is somehow that goes through certain procedures so it's usable in the United States court. So pretty much the same procedure that was followed here, except they would be on foreign soil as opposed to here. Right. Well, actually, I would suggest this is probably a better procedure here because we have a videotape in this scenario. But that also raises the same concerns with regard to the confrontation clause, whether or not they're subject to the penalties of perjury in the United States. I mean, we're wrestling with these issues now as we talk about amending Rule 15 for terrorism cases and that sort of thing to take the testimony of witnesses in a foreign country. Right. Okay. Thank you very much. Thank you. Counsel, I think you had a little time left. Thank you. If you listen to the government's argument with respect to the compliance with Rule 15 and the statute, the only aspects of the rule and the statute that were    The defendant is not subject to the penalties of perjury. And that's the problem with these people and getting them out of this country as soon as possible. The rest, the part that protects the defendant, is ignored. And that's the problem that we have with these types of cases. And even though there are But, again, as a practical matter, I'm not we can certainly say to the government, you've got to at least make the effort to try and get them back. But practically speaking, there's no way to force them to come back. Do you agree? To force, I agree. But the government chooses to initiate the case. The rights attendant to the right of confrontation and the right to counsel at a jury trial kick in when the government files those charges against my client. So it's the government's burden to bring these people to testify against my client. Well, but as counsel points out, even under the Mutual Legal Assistance Treaty, the procedure contemplates the taking of the evidence on foreign soil with the defendant represented by counsel at that proceeding. But it doesn't get over the It doesn't get the witness into the United States, as you're arguing. Well, I don't think that's the end of the inquiry, Your Honor. And in response to Judge Fletcher's question, what they can do is they can serve a subpoena at the time. Every single one of these witnesses testified in response to questions, yes, I'm willing to give my address to the government and the defense attorney. Yes, I'm willing to come back if you pay for it. So they could have been reached. Sending a letter to the material witness's lawyer three weeks before trial in English saying the trial is coming up in three weeks. If you want to come, let us know. We'll pay for it is pretty lame in terms of making diligent efforts to bring a person into the country. And that's their answer to your question. You can serve them with a subpoena before you leave. You can. But if they don't show up, there's nothing we can do to enforce it. That's a practical problem. But you can contact them enough in advance of trial sending them a letter to their home in Mexico in Spanish saying you promised to do this before. We realize we can't force you, but we'd like you to come. Please contact us at this number. We'll arrange for your transportation. That's pretty simple. They could do that much. They could be checking with Border Patrol to see if these people have come in again after they were released. Some of these witnesses had come in two and three times before. So there's a lot more than the government did in this case. There's a lot more that they could do. And the bottom line is that Mr. Matusayas was deprived his right of confrontation. Thank you. Thank you very much, counsel. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson